Attachment 3



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD |
| **NUMBER:** | 7310.04 |
| **DATE:** | 12/16/98 |
| **SUBJECT:** | Community Corrections Center (CCC) Utilization and Transfer Procedure |

1.  <u>PURPOSE AND SCOPE</u>.  To provide guidelines to staff regarding the effective use of Community Corrections Centers (CCCs).  This Program Statement defines placement criteria for offenders, requires that staff members start the placement process in a timely manner, and defines the circumstances when inmates may refuse Community Corrections (CC) programs.  It also establishes an operational philosophy for CCC referrals that, whenever possible, eligible inmates are to be released to the community through a CCC unless there is some impediment as outlined herein.

CCCs provide an excellent transitional environment for inmates nearing the end of their sentences.  The level of structure and supervision assures accountability and program opportunities in employment counseling and placement, substance abuse, and daily life skills.

One reason for referring an inmate to a CCC is to increase public protection by aiding the transition of the offender into the community.  Participating in community-based transitional services may reduce the likelihood of an inmate with limited resources from recidivating, whereas an inmate who is released directly from the institution to the community may return to a criminal lifestyle.  While clearly dangerous inmates should be separated from the community until completing their sentences, other eligible inmates should generally be referred to CCCs to maximize the chances of successful reintegration into society.

Finally, the scope of this Program Statement has been extended to include CCC consideration/placement of District of Columbia Department of Corrections inmates.

offense), procedures will be followed according to Section 10.i.(2), Limitations on Eligibility for All CCC Referrals.

The following CCC referral guidelines apply in addition to the guidelines provided for regular referrals:

(1) The inmate must be pregnant upon commitment with an expected delivery date prior to release.

(2) The inmate or guardian must assume financial responsibility for the child's care, medical and support, while residing at the CCC. Should the inmate or the guardian be unable or unwilling to bear the child's financial cost, the inmate may be transferred back to her parent institution.

(3) An inmate who becomes pregnant while on furlough, or has more than five years remaining to serve on her sentence(s), or plans to place her baby up for adoption shall not be referred for MINT placement.

**Referrals to CCMs should state a specific date of placement. This date should be approximately two months prior to the inmate's expected delivery date.**

The CCC's Terminal Report should fully describe the inmate's experience in, and reaction to, the MINT Program. It should also summarize counseling received in the program and include follow-up medical or program recommendations for the institution to facilitate the inmate's transition.

Inmates in need of foster care placement assistance shall be referred to the institution social worker, or if the institution does not have a social worker, staff shall contact a social worker in the community for foster care placement assistance.

10. <u>LIMITATIONS ON ELIGIBILITY FOR ALL CCC REFERRALS</u>. Inmates in the following categories shall not ordinarily participate in CCC programs:

a. Inmates who are assigned a "Sex Offender" Public Safety Factor.

b. Inmates who are assigned a "Deportable Alien" Public Safety Factor.

c. Inmates who require inpatient medical, psychological, or psychiatric treatment.

   d.  Inmates who refuse to participate in the Inmate Financial Responsibility Program.

   e.  Inmates who refuse to participate, withdraw, are expelled, or otherwise fail to meet attendance and examination requirements in a required Drug Abuse Education Course.

   f.  Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement.

   g.  Ordinarily, inmates serving sentences of six months or less.

   h.  Inmates who refuse to participate in the Institution Release Preparation Program.

   i.  Inmates who pose a significant threat to the community. These are inmates whose current offense or behavioral history suggests a substantial or continuing threat to the community.

   Examples are inmates with repeated, serious institution rule violations, a history of repetitive violence, escape, or association with violent or terrorist organizations.

   To determine whether an inmate poses a significant threat, a number of factors must be considered.  The key consideration is public safety when assessing the inmate's proclivity for violence or escape against their placement needs.

   A waiver of the Public Safety Factor is not required for inmates transferred via unescorted transfer to CCC placements.

   Ordinarily, inmates with a single incident of violence should not automatically be excluded from CCC placement.  As noted earlier, clearly dangerous inmates should be excluded from CCC placement.

      (1)  When there exists a basis for significant doubt regarding whether the inmate currently poses a threat to the community, the Warden should consider contacting the Chief USPO in the release district (see the Sample letter (Attachment A)) to seek guidance on the referral's appropriateness.  A copy of this letter shall be maintained in the Inmate Central File.

      (2)  When an inmate is excluded under this subsection, a memorandum, signed by the Warden, shall be prepared and placed in the Inmate Central File to explain the rationale for exclusion from CC Programs.

   j.  Inmates whose admission and release status is pretrial, holdover, or detainee.