IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JUAN CARLOS CRUZ,

    Petitioner,

v.                                  Civil Action No. 2:05-cv-877

SCOTT A. MIDDLEBROOKS,

    Respondent.
_____/

**PETITIONER'S REPLY TO RESPONDENT'S RESPONSE TO PETITIONER'S**

**28 U.S.C. §2241 HABEAS CORPUS PETITION**

COMES NOW, petitioner, Juan Carlos Cruz (hereinafter "Cruz"), pro se, and respectfully files this "Reply" before this Honorable Court.

### I. SUMMARY OF ARGUMENT

1. In his "Response" to Cruz's habeas corpus petition (i.e. "§2241") it is the position of the Respondent that Cruz does not qualify for the "one year sentence reduction" (18 U.S.C. §3621(b)) because: "Pursuant to 28 C.F.R. 550.59(b), an inmate who successfully completes a residential drug abuse program and who based on his eligibility, is transferred to a Community Corrections Center (CCC), is required to participate in a community-based treatment program. Inmates who complete both the institution and community portion of the drug program may receive up to a year off their sentence, if otherwise eligible. However, as indicated above, the petitioner is not eligible for placement

in a CCC and he therefore, is unable to complete the program." Id. (Response p.5, ¶2).

The above statement by the Respondent lacks any legal basis. Cruz is at present undergoing the "After Care Program" at the F.P.C. Montgomery, the same "After Care Program" offered to other inmates placed in CCC. Wherefore, it is axiomatic that the placement of Cruz in a CCC is no longer required for Cruz to successfully complete the RDAP. See Exhibit "A".

Further, it needs to be noticed that the "one year sentence reduction" is granted to the inmates prior to their placement in CCC. The BOP does not wait for the inmate to successfully complete the CCC portion of the RDAP in order to grant the inmates their one year sentence reduction. Consequently, because Cruz has successfully completed the initial part of the RDAP he should be granted his one year sentence reduction, and once he finishes the "After Care Program" then, his custody should be turned over to INS for whatever proceedings INS decides to conduct regarding Cruz's deportation (i.e. Cruz is a Cuban national and as such he is not deportable).

2. The Respondent concedes that Cruz is "not" an INS detainee (Res. p.4, ¶2), and based on such status argues that Cruz is required to work while serving his term of imprisonment. However, the Respondent does hold against Cruz the fact that INS has launched a detainer against Cruz, and on such ground denies Cruz placement in CCC relying on the INS detainer, and thereby, contradicting his earlier submission acknowledging that Cruz is

-2-

not an INS detainee.

In essence, for CCC placement purpose/s the Respondent is classifying Cruz as an INS detainee, and for work purposes the Respondent does not classify Cruz as an INS detainee so as to exclude Cruz from the safeguards against "involuntary servitude" as guaranteed by BOP PS 5251.05, <u>Inmate Work and Performance Pay Program, section 5, page 3, which provides that INS detainees are excluded from work</u>. See <u>Exhibit "B"</u> (Declaration of, Chalon Moore, CMC BOP) and <u>Exhibit "C"</u> (relevant pages to BOP PS 5251.05).

In essence, Cruz is presently being exposed to "involuntary servitude" (i.e. slavery) at the hands of the Respondent, in violation of Cruz' constitutional rights under the Thirteenth (13th) Amendment to the United States Constitution, which prohibits such practice.

3. The Respondent argues that Cruz is not part of a suspect class. Such position is irrational because Cruz is being denied the benefits of a federally funded program (i.e. RDAP) on grounds that INS has launched a detainer against Cruz on grounds that he is a Cuban national and as such he must undergo deportation proceedings. The fact that Cruz is a Cuban national (i.e. Hispanic/Hispano) is the ground/s for the BOP's denial of the benefits of the RDAP, a federally funded program, makes Cruz part of a suspect class (i.e. Hispanos/aliens who are legally residing in the United States who have INS detainers). <u>Exhibit "D"</u> (Warden's opinion, Opinion of the Southeast Regional Office and

Opinion of BOP's Office of General Counsel in Washington). See Keyes v. School District NO.1, 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973)( holding that: The District Court erred in separating Negroes and Hispanos for purposes of defining a "segregated school. We have held that Hispanos constitute an identifiable class for purposes of the Fourteenth Amendment...In fact, the District itself recognized that '[o]ne of the things that the Hispano has in common with the Negro is economic and cultural deprivation and discrimination.'..." Id. see also MODERN CONSTITUTIONAL LAW Cases and Notes, Sixth Edition by Ronald D. Rotunda, page 640, Suspect Class and the Equal Protection.

In essence, the Respondent's position arguing that Cruz is not part of a suspect class is contrary to the jurisprudence announced by the Supreme Court in Keyes, supra. Cruz is not being denied the benefits of the RDAP a federally funded program because he is a "federal inmate" rather, the denial is based on the fact that he is a Hispano with an INS detainer thus, even though inmates (i.e. prisoners) do not constitute a suspect class, Hispanos do, and therefore, Cruz is part of a discriminated suspect class (i.e. Hispanos).

4. The Respondent argues that the Due Process Clause nor 18 U.S.C. §3621(e)(2)(B) creates a liberty interest, and for such proposition relies in Fristoe v. Thomson, 144 F.3d 627, 620 (9th Cir. 1998). However, the Respondent's reliance in Fristoe, supra is misplaced because, the petitioner in Fristoe asserted the

-4-

Equal Protection Clause by arguing that the the district court was compelled to adhere by the Ninth Circuit's decision in Castillo-Felix v. INS, 601 F.2d 459, 467 (9th Cir. 1979). The law is clear, Circuit Court rulings are not binding on other Circuits, and that's why the petitioner in Fristoe failed to demonstrate a violation of the Equal Protection. In the case at bar Cruz is not arguing the Equal Protection right to have the BOP or this Court to bind its decision/s based on the ruling by a Circuit Court other than the Eleventh Circuit. Rather, Cruz claims a violation of the Equal Protection Clause because he is being denied the 'one year sentence reduction" upon his completion of the RDAP based on the fact that he is a Cuban national. Cruz seeks the equal protection because the Constitution guarantees that he will be treated equally to "all" RDAP participants who successfully completed the RDAP program, and who are not INS detainees (i.e. as conceded by the Respondent). Certainly, even though the granting of the one year sentence reduction is at the discretion of the Respondent, the Respondent for example, could not deny the sentence reduction to "any" or "all" Negro participants based on the color of their skin or, to Jews based on their religious believes or, to homosexuals based on their sexual preferences, or member of a Fascist or Communist party based on their political believes and therefore, the BOP does not have discretion to deny Cruz the year sentence reduction basing such denial on the fact that Cruz is a Cuban national (U.S. Permanent Resident who has legally resided

-5-

in this country since October 14, 1982).

In essence, Cruz does have an invested liberty interest in not being discriminated and in such fashion deprived of the one year sentence reduction.

For the foregoing reasons petitioner's 28 U.S.C. §2241 writ of habeas corpus should be granted.

### ARGUMENT AND MEMORANDUM OF LAW

II. **THE RESPONDENT MISREPRESENTS THE FACTS OF THE CASE IN HIS RESPONSE**

It is the Respondents submission in the Response that Cruz cannot successfully complete the RDAP until he is placed in CCC where he will undergo the "After Care Treatment" which allegedly is a prerequisite to the successful completion of the RDAP. The aforementioned statement is contrary to the record. Cruz is presently attending and in his way to successfully completing the "Aftercare Program", which is being provided to Cruz at the F.P.C. Montgomery by Dr. Otero. See Exhibit "A". Consequently, because Cruz is participating in the "After Care Program" at the F.P.C. Montgomery, his placement in a CCC is not required for the successful completion of the RDAP.

In light that the above noted fact/s have been misrepresented by the Respondent such fact/s should be stricken from the record, and its context should not have an impact on this litigation based on its untruthfulness.

## II. CRUZ IS UNDERGOING INVOLUNTARY SERVITUDE AT THE HANDS OF THE RESPONDENT

On page 4, paragraph 2, of his Response the Respondent argues that Cruz is not undergoing "involuntary servitude" because, he is not an INS detainee and therefore, he does not fall under the protection/s offered by BOP PS 5251.05. <u>Inmate Work and Performance Pay Program</u>, section 5, page 3, which provides that "INS detainees are excluded from work requirements unless they the inmate waives his right not to work". <u>Id</u>. The Respondent further argues that "Mr. Cruz is not an INS detainee because the INS has not made a final determination regarding his deportation status." <u>Id</u>. at (Response. p.4, ¶2). Notwithstanding the Respondent denies Cruz's placement in CCC because Cruz has an INS detainer (i.e. administrative detainer) which makes him a detainee for purposes of BOP PS 7310.04 <u>Community Corrections Center Utilization and Transfer Procedure.</u>

In essence, notwithstanding the fact that Respondent avers that Cruz is not an INS detainee, the Respondent classifies Cruz as an INS detainee for purpose/s of CCC placement. The Respondent cannot have both sides of the coin that is, either Cruz is an INS detainee and based on such classification cannot be place in CCC and cannot be forced to work or, in the alternative if Cruz is not an INS detainee then, he qualifies for CCC placement and does have to work. Cruz cannot be classified as an INS detainee for CCC placement and not an INS detainee for work purposes.

Wherefore, Cruz submits that he has clearly established his claim that he, Cruz, is presently undergoing "involuntary servitude" (i.e. slavery) at the hands of the Respondent or, that he is being discriminated because he is a Cuban national and thus, deprived from the benefits of a federally funded program.

### IV. THE ACTIONS OF THE RESPONDENT VIOLATE CIVIL RIGHTS ACT OF 1964

In his response the Respondent fails to address Cruz's claim whereby, Cruz alleges that the actions of the Respondent violate the Civil Rights Act of 1964, Document N. PL 88-352, Date July 2, 1964, 88th Congress, H.R. 7152. Consequently, Respondent concedes to Cruz's claim. See Fed.R.Civ.P. Rule 8(d), Rule 5 of the Rules Governing Habeas Corpus, 28 U.S.C. §2248.

Respondent's counsel understands that failure to address an issue presented by a petitioner in a writ of habeas corpus violates Federal Practice and Procedure (i.s. law), as set forth above, and therefore, same constitutes grounds for the granting of the instant petition. Counsel for the Respondent is also aware that the Fed.R.Civ.P. are applicable to habeas corpus petitions by way of Habeas Corpus Rule 11, which in pertinent part states: The Rules of Civil Procedure, to the extend that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules. Id. Notwithstanding all aformentioned procedural mandates (i.e. law) mandates of law the Respondent has chosen to ignore ignore same by failing to defend to Cruz's claim/s. Notwithstanding, Cruz

-8-

will further state as follows in support of his claim in the event this Court decides to overlook "all" aformentioned defaults by the Respondent.

In his Response the Respondent 'declassifies' Cruz as an INS detainee for "work" purposes and then 'reclassifies' Cruz as an inmate with a 'detainer' (i.e. detainee?) for work purposes.. Therefore, if the fact that Cruz has an INS detainer does not make Cruz an INS detainee as apparent by the Respondent's 'declassification' of Cruz as an INS detainee then, said detainer cannot be used by the Respondent as grounds for denying Cruz's placement in a CCC because, according to BOP PS 7310.04. Correction Center Utilization Manual and Transfer Procedure (Exhibit " " - relevant pages) inmates with pending detainers are not eligible for CCC placement. The Respondent's position appears to be conflictive but it is not - Please see PS 7310.04 p.10, ¶10(b), which estates: "Limitations on Elegibility For All CCC Referrals. (b) inmates who are assigned a "Deportable Alien" Public Safety Factor. In essence, it appears that the Respondent has failed to notice that being classified as a deportable alien does not automatically preclude Cruz fom placement in CCC instead, the BOP PS 7310.04, ¶10(b) requires that Cruz's personal characteristics be considered under the Public Safety Factor Standard. An individual can fall under Public Safety Factor standard if he is, (1) a danger to the community or, 2) risk of flight (i.e. same as the requirements for bond pending criminal prosecution). In the case at bar Cruz was released on bond

-9-

during the pre-trial proceedings of his criminal case thus, a judicial determination has been previously made that Cruz is not a danger to the community. Also, the fact that Cruz is at present being housed at the Federal Prison Camp Montgomery, a minimum security BOP facility, which does not even has a fence around its perimeter and the doors in the dorms remain "open" day and night, coupled with the fact that Cruz has worked unsupervised at the Maxwell Air Force Base golf course, clearly demonstrate that Cruz is does not poses Public Safety Factor (i.e. danger to the community or, risk of flight). Further, the fact that Cruz is not a risk of flight was first judicially determined when he was granted bond during the pre-trial process of his criminal case, and also by the United States Supreme Court when same ruled that Cubans who are deportable are not a risk of flight. See <u>Daniel Benitez v. Michael Rozos</u>, No. 03-7434 (January 12, 2005), and also decided on the same day <u>Clark v. Martinez</u>, No. 03878 (January 12, 2005). In essence PS 7310.04 does not automatically deprive inmates with INS detainer from CCC placement rather, it only precludes those who are pose a Public Safety Factor by either posing, a danger to the community or, a risk of flight, and Cruz does not fall under any of these two aforementioned categories. Based on the foregoing is is safe to aver that, If "all" those inmates that are not "detainees" (i.e. Cruz) and successfully complete the RDAP are eligible for the one year sentence reduction then, Cruz who is no longer classified as an INS detainee is also eligible for the one year sentence reduction in light that, Cruz has successfully completed the RDAP.

In essence, the "only" reason Cruz is being denied the benefits of the RDAP, a federally funded program, is because, Cruz is a Cuban national, and the Respondent refuses on his own initiative and contrary to PS 7310.04(10)(b) to place Cuban nationals in CCC (i.e. even those who do not pose a Public Safety Factor) and further, refuses to grant the one year sentence reduction to Cuban nationals who successfully complete the RDAP and undergo the "After Care Program" in the prison/s. Exhibit "E"

Based on the foregoing it is impossible to excused the Respondent's conduct which has deprived Cruz of the benefits of a federally funded program (i.e. RDAP) as not violating Cruz's constitutional rights under the Equal Protection of the Law (i.e. the denial is based on Cruz's nationality - Cuban national) and for same not to violate the Civil Rights Act of 1964.

**V. THE RESPONDENT MISINTERPRETS THE LANGUAGE AND INTENT OF BOP PS 7310,04, p.10, ¶10(b)**

The Respondent advertently or inadvertently misinterprets and thus, misrepresents before this Court the intent of BOP PS 7310.04. The founders of the aforementioned PS clearly did not intended for an inmate with an INS detainer to fall under the category of inmates named in BOP PS 7310.04, 10(f) (i.e. inmates with unresolved pending **charges**, or **detainers**, which will likely lead to **arrest, conviction, or confinement**) because, an INS detainer is an 'administrative detainer' (i.e. which cannot be challenged under the IAD), and which will not lead to conviction or confinement, contrary to a 'criminal' detainer for which the aforementioned Policy Statement was created. The Interstate

Agreement on Deatainers Act, 18 U.S.C. App. 2, Art III (IAD) is a compact entered into by forty-eight states and the United States for the purpose of efficiently disposing of outstanding criminal charges brought against prisoners incarcerated in other jurisdictions. See <u>Hunter v. Samples</u>, 15 F.3d 1011 (11th Cir. 1994). Cruz's case is to be reviewed under the parameters and thus, intent of the language of 7310.64, 10(b). <u>Limitations On Elegibility For All CCC Referals</u>. "Inmates in the following categories shall not ordinarily participate in CCC programs: (b). Inmates who are assigned a 'Deportable Alien' Public Safety Factor. The aforementioned Policy Statement was created for individuals with INS detainers who pose a threat to the community or are a risk of flight.

As previously argued and established above, Cruz, does not present either a danger to the community or, a risk of flight, and consequently, it is clear that Cruz qualifies for placement in CCC and as such the refusal by the Respondent to place Cruz, and all other Cuban national situated equally to Cruz in CCC, a federally funded BOP Program also constitutes discrimination based on the fact that the only grounds for such refusal/s is the individual's nationality (i.e. Cuban national). Certainly, there exists no governmental interest in the aforementioned type of discrimination and that is the reason why the Respondent has failed to make such showing in the Response. See Issue IV of this Reply.

-12-

ers of the PS enacted BOP PS 7310.04, ¶10(b) which addresses inmates who have an INS detainer, by clearly precluding from placement in CCC those "Inmates who are assigned a ' Deportable Alien' Public Safety Factor. It is safe to assume that the founders were not engaging in a mere verbal exercise when they only included in the provision of PS 7310.04 10(b) those Deportable Aliens who pose a danger to the community or, constitute a risk of flight (i.e. Public Safety Factor). A public Safety Factor is the only legal basis for holding an individual without bail (bond) pending resolution of criminal proceedings against the individual. See 18 U.S.C. §3146, et seq. However, in order to detain a defendant on the basis of dangerousness the government must prove by clear and convincing evidence that no condition or combination of conditions will reasonable assure the safety of any other person and the community. See United States v. Medina, 775 F.2d 1398 (11th Cir. 1985).Simmilarly, in order to detain an individual based on allegations that he is a risk of flight, the government must establish that the individual is a risk of flight. see Medina, supra, at 1398. Therefore, for the Respondent to apply a Public Safety Factor to Cruz would mean that a determination has been made that Cruz poses, 1) a danger to the community or, 2) a risk of flight, and such is not the case in the instant matter. ( Please see Issue IV above demonstrating that Cruz does not poses a danger to the community or a risk of flight). Furthermore, the Immigration and Naturalization Services (i.e. now a Department of

Homeland Security) wrote a letter to Cruz whereby, Cruz is informed that Homeland Security does not object to Cruz being placed in CCC, and clearly informs that the INS detainer should not preclude Cruz from receiving the benefits of any BOP Program as are CCC and RDAP. See <u>Exhibit "F"</u> (i.e. letter).

For whatever reason, that being advertently or, inadvertently, the Respondent has wrongfully classified Cruz as either posing a danger to the community, and posing a risk of flight or, in the alternative the Respondent wrongfully classified Cruz as an inmate who has a 'criminal" detainer launched against him and that such detainer could culminate in further imprisonment. No matter which of the two aforementioned categories were chosen by the Respondent to categorized Cruz, such categorization is contrary to the language of the Policy Statement in light that Cruz is neither an INS detainee or, an inmate with a criminal detainer. He is a 'deportable alien" who does not poses a "danger to the community or, a risk of flight thus, not falling under BOP PS 7310.64, 10(b). Therefore, the actions of the Respondent are not only contrary to law, but violate Cruz's constitutional rights under the Equal Protection to be free from discriminatory pratice/s at the hands of the Respondent.

Based on the above Cruz qualifies for immediate placement in CCC. Wherefore, Cruz prays for this Honorable Court to order the Respondent to place Cruz in CCC pursuant to BOP PS 7310.04, ¶10(b) (See Exhibit " " - relevant part of the BOP

-14-

Program Statement).

### VI. THE RESPONDENT HAS FAILED TO SHOW A GOVERNMENTAL INTEREST FOR HIS DISCRIMINATION AGAINST CRUZ BASED ON THE FACT THAT CRUZ IS A CUBAN NATIONAL

In the case at bar the Respondent has elected to apply the law and BOP Policy in an impermissible selective and thus, clearly discriminatory fashion thereby, violating Cruz' constitutional rights under the Equal Protection Clause of the United States Constitution. See <u>Central Airlines, INC. v. United States</u>, 138 F.3d 333 (8th Cir. 1988)(holding that the Equal Protection Clause prohibits government officials from selectively applying the law in discriminatory way). In the case at bar the fact that Cruz is a Cuban national is being held against him to deprive Cruz of the benefits of a federally funded program (RDAP), and from the guarantees and protections offered to inmated by the BOP Policy Statement (i.e. the Respondent's own statement). Consequently, Cruz has made an overwhelming showing that his equal protection guarantees have been violated based on his race. See c.f. <u>Personal Administrator v. Feeny</u>, 442 U.S. 256, 279, 60 L.Ed.2d 870 (1979)("In order to state a claim under the EPC, a plaintiff must allege not only that the defendants were aware of her race at the time of their action, but also that defendants acted because of her race).

In the instant matter the action of the Respondent and those of all who denied Cruz relief during the administrative remedies in the instant action, clearly, made all determinations regarding

-15-

the merit/s of Cruz claim by relying on Cruz nationality (i.e. Cuban national), and thereby, has/have subjected Cruz to racial classification without such shocking classification serving "any" governmental interest. C.f., Adaran Constructors, Inc. v. Pena, 515 U.S. 200, 115 S.Ct. 2097, 132 L.ed.2d 158 (1995)("Our action today makes explicit [that] federal racial classification, like those of State, must serve a compelling governmental interest, and must be narrowly tailored to further that interest"). There exists no governmental interest which the BOP can invoke that would excuse the BOP's discriminatory practice/s against Cruz. Cruz, a Cuban national who has legally resided in this nation since the year 1983 is protected by the United States Constitution, notwithstanding the fact that he never became a citizen of this nation. See United States v. Verdugo Urquidez, 494 U.S. 259, 108 L.Ed.2d 222, 110 S.Ct. 1056 (1990). C.f., " As a general rule, alien inhabitants of a state are entitled to the constitutional guarantees of due process and equal protection" (3 AmJur 2d, Aliens and Citizens §§ 8, 9). See also 68 L.Ed.255 (annotation)(dealing with the question as to what provision of the Federal Constitution are invocable by by aliens independently of treaty). Id. at De Canas v. Bica, 47 L.Ed.2d 876 (1976). "In (accordance) consonant with the foregoing general principles, the Supreme Court has held invalid of the 'Equal Protection Clause' of the Fourteenth Amendment., ... (6) state statutes denying 'Welfare benefits to resident aliens who have not resided in the United States for a number of years." Id. at 879; Plyler

-16-

v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). In Plyler the question presented to the Court was whether, consistent with the Equal Protection Clause of the Fourteenth Amendment, Texas may deny undocumented school-age children the free public education that it provides to children who are citizens of the United States or legally admitted aliens... The State of Texas argued that undocumented aliens, because of their immigration status, are not ' persons within the jurisdiction' of the State of Texas, and that they therefore have no right to the equal protection of the law. The Court rejected this argument after noting that "the Fourteenth Amendment provides that "No State shall...deprive 'any' person of life, liberty, or property, without due process of law; nor deny **any person within its jurisdiction the equal protection of the laws."** The Court went on to hold: "Whatever his status under the immigration laws, an alien is surely a 'person' in any ordinary sense of that term...That a persons initial entry into a State, or into the United States, was unlawful, and that he may for that reason be expelled, cannot negate the simple fact that his presence within the State's territorial perimeter. [H]e is subject to the full range obligations imposed by the State's civil and criminal laws. And until he leaves the jurisdiction - either voluntary, or involuntary in accordance with the Constitution and Laws of the United States - he is entitled to the equal protection of the laws that a State may choose to establish... Id. (Justice Brennan delivered the opinion). The Court's opinion was based on the

fact that the State of Texas was unable to show a govermental (i.e. State of Texas) interest in depriving the children of illegal aliens the benefit of an education. In the case at bar Cruz is not an illegal alien rather, he is a **legal resident alien** and therefore, there exists no question that he is protected by the Equal Protection Clause in a higher magnitude than the children (i.e. illegal aliens) in Plyler, supra. Therefore, any BOP Policy which deprives Cruz (i.e. a legal resident of the United States) his constitutional gurantee/s to be free from discrimination under the Equal Protection Clause constitutes an unconstitutional provision of law unless, the BOP can demonstrate a governmental interest for enacting and applying such provision of law (Policy Statement mandate). See also Hampton v. Sun Wong, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976).

The respondent's failure to show a governmental interest in violating Cruz his constitutional rights under the Equal Protection Clause, demonstrates a discriminatory practice in part of the Respondent.

## VII.   CONCLUSION

For the foregoing reasons Cruz's §2241 writ of habeas corpus should be granted and the Respondent ordered to, )1 place Cruz in a CCC, and 2) grant Cruz his one year sentence reduction under 18 U.S.C. §3621(b).

November 26, 2005                              Respectfully submitted,

                                               *Juan C. Cruz*
                                               _____
                                               Juan Carlos Cruz, pro se.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing legal instrument was served on this 26th day of November, 2005, to: United States Attorney's Office, s/R. Randolph Neely, AUSA, Counsel for the Respondent, Post Office Box 197, Montgomery, Alabama 36101-0197. The service was conducted via first class mail by depositing same in the F.P.C. Montgomery mailbox designated for legal mail "only". This Certificate of Service is submitted pursuant to 28 U.S.C. §1746.

_____
Carlos Cruz, pro se, petitioner,
Reg No. 40595-004
F.P.C. Montgomery
Unit - Birmingham "B"
Maxwell Air Force Base
Montgomery, AL  36112