IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

JUAN CARLOS CRUZ,

     Petitioner,

v.                                                Case No. 2:05-CV-877-F

SCOTT A. MIDDLEBROOKS,

     Respondent.

_____/

**PETITIONER'S REPLY TO RESPONDENT'S SUPPLEMENTAL RESPONSE**

**TO PETITIONER'S 28 U.S.C. §2241 WRIT OF HABEAS CORPUS**

COMES NOW, the petitioner, Juan Carlos Cruz (hereinafter "Cruz"), pro se, and respectfully files this Response before this Honorable Court.

**SUMMARY OF ARGUMENT**

Cruz has successfully completed both the Drug Alcohol Program ("RDAP") and the "After-care" portion of the aforementioned program thus, Cruz has successfully completed all the prerequisites for the successful completion of the program. The only reason Cruz is not receiving his one year sentence reduction under §3621(e)(2)(B) is because Cruz is being discriminated against on the grounds that he is a Cuban national. Exhibit "A".

In his Response the Respondent argues that Cruz cannot be placed in CCC and thereby, is precluded from attending the After-care portion of the RDAP, an alleged prerequisite for the successful completion of the RDAP. Based on the aforementioned

The Respondent cannot have both sides on the coin that is, he cannot classify Cruz an an INS detainee and thereby, deny Cruz the benefits of the RDAP (i.e. a federally funded program), and then simultaneously declassify Cruz from his INS status for work purposes.

For the foregoing reasons Cruz's petition for the issuance of the writ of habeas corpus should be granted.

### INTRODUCTION

On November 16, 2005, this Court issued an "Order" to the Respondent compelling the Respondent to show a persuasive governmental interest as to why Cuban nationals could not be placed in CCC or, granted the one year sentence reduction pursuant to 28 U.S.C. §3621(e)(2)(B) upon the individual's successful completion of the Residential Drug Alcohol Program (RDAP), and further successful completion of the After-care Program.

The Respondent's Supplemental Response is nothing more than a rehash of the Initial Response. Inasmuch, that the Respondent once again has failed to demonstrate a compelling "govermental interest" in denying Cuban nationals the benefits of a federally funded program.

The Supplemental Response fails to address Cruz's claim that he is at the present time being subjected to involuntary servitude (i.e. slavery) in violation of the constitutional guarantees found in the Thirteenth Amendment to the United States Constitution, Section 1. The fact that the Respondent has neither rejected nor denied to Cruz's aforementioned claim constitutes an acceptance as

to the truth of the said claim.   See Fed.R.Civ.P. Rule 8(d); Rule
5 of the Rules governmening Habeas Corpus; 28 U.S.C. §2248.

Further, because the Respondent's Response is intended to
obfuscate the decisional process in the instant matter, Cruz will
address each paragraph of the aforementioned Supplemental Response
in the order in which the Respondent presents the arguments
paragraph by paragraph.

<b><u>ARGUMENT WITH INCORPORATED MEMORANDUM OF LAW</u></b>

1.   <u>Answer to Paragraph (1) Of Respondent's Supplemental Response</u>

In paragraph (1) the Respondent argues that Cruz does not
qualify for halfway house ("CCC") placement because his INS
detainer (i.e. now known as Immigration and customs Enforcement
(ICE)).   The Respondent's position is contrary to BOP Policy
Statement 7310.04(10)(b).   <u>Limitations On Eligibility For All CCC
Referrals</u> which specifically states: "(b) inmates who are assigned
a Deportable Alien Public Safety Factor."   Cruz does not present a
Public Safety Factor because, he is not a danger to the community
as previously established by judicial determination during the
pretrial proceedings of Cruz criminal case for which he is serving
the present sentence of imprisonment (Criminal Case No. 9:96-CR-
08014-001).

Further, this year the Supreme Court ruled that Cuban
nationals are not a risk of flight or, deportable. see <u>Daniel
Benitez v. Michael Rozos</u>, No. 03-7434 (January 12, 2005).   See
also decided on the same day <u>Clark v. Martinez</u>, No. 03878 (January
12, 2005).   Therefore, the Respondent's argument lacks any legal
merit.

-3-

2.  <u>Answer To Paragraph (2) Of Respondent's Supplemental Response</u>

In paragraph (2) the Respondent argues that Cruz is precluded from halfway house placement (CCC) by BOP PS 7310.04. Cruz's eligibility for halway house placement has to be reviewed under BOP PS §7310.04(10)**(b)**. However, the Respondent is relying on section (f) of such program which is intended **"only"** for those inmates with criminal detainers. The Respondent's misinterpretation of the Policy Statement is a willful attempt to obstruct the decisional process before this Court and thereby overcome Cruz's claim/s. See PS 7310.04(f) ("inmates with unresolved pending cherges, or detainers, which will likely lead to arrest, conviction, or confinement"). The aforementioned type of detainers are not INS administrative detainers rather, they are criminal detainers that will likely culminate in conviction or, confinement. Also, the aforementioned detainers can be challenged under the IAD so as to safeguard the detainees constitutional guarantees under the "Speedy Trial Act". However, INS detainers being administrative rather than criminal detainers cannot be challenged under the IAD or the Speedy Trial Act. Based on the foregoing the U.S. Immigration and Custom Enforcement does not oppose for Cruz being placed in halfway house. <u>Exhibit "B"</u> (i.e. letter from U.S. Immigration and Customs Enforcement)(ICE). The letter clearly states **"The detainer is not intended to cause you any deprivation while in prison"**. Id ¶3. Wherefore, the Respondent's arguments lacks any legal merit.

3.  <u>Answer To Paragraph (3) Of Respondent's Supplemental Response</u>

-4-

In paragraph (3) of the Supplemental Response the Respondent's interpretation of the language of PS 7310.04 is irrational. The aforementioned Program Statement clearly separates different situated inmates by placing them in different categories such as, Deportable aliens (i.e. see (b)), and inmates with criminal detainers (i.e. see (f)). Therefore, for the Respondent to want to comigle the two different categories for his own benefit is contrary to the intent of the Program Statement and contrary to the intent of its enactment. The language of the Program Statement is clear - the only Deportable Aliens who are precluded by the Program Statement from placement in CCC are those Deportable Aliens who present a Public Safety Factor. In the case at bar, Cruz does not present a Public Safety Factor nor, does the Respondent submit or even ellege that Cruz presents a Public Safety Factor. Consequently, Cruz qualifies for placement in halfway house (CCC). The only reason Cruz is being denied placement in CCC is that for the past ten years the BOP has discriminated against Cuban nationals with detainers, and has excluded them from placement in CCC by intentionally reviewing their petitions for CCC placement under PS 7310.04(10)(f) rather than, under 7310.04(10)(b)(i.e. the proper/corresponding/relevant Section of the Program Statement). Counsel for the respondent is trained in the law and thus, it is inconceivable that he cannot correctly interpret the language of a simply worded BOP Policy Statement. Consequently, the only reasonable conclusion in the instant matter for knowingly applying the wrong Section of the Program Statement is that such action is nothing more than an

-5-

attempt to camouflage the racial discrimination that has been ongoing for over a decade against Cuban nationals by purposely misinterpreting the language of a simple BOP Policy Statement.

Furthermore, the Respondent argues that Cruz should be held in prison so as to afford U.S. Immigration and Customs Enforcement the opportunity to pick-up Cruz at the jurisdiction holding the detainer. The aforementioned argument is frivolous in light that U.S. Immigration and Custom Enforcement does not object to the placement of Cruz in a halfway house (CCC). See Exhibit "B" (i.e. response by U.S. Customs Enforcement to Cruz request to be placed in a halfway house).

4.  Answer To Paragraph (4) Of Respondent's Supplemental Response

In paragraph (4) of the Supplemental Response the Respondent argues that "playing with the phrases 'INS Detainee' and 'detainer' petitioner attempts to confuse the issue before this Court". Id at p.3. The aforementioned allegation by the Respondent is preposterous. It is the Respondent who, 1) classifies Cruz as an INS detainee as result of the INS detainer launched against him (Respondent's Initial Resp., p.3 )(Supp. Resp., p.1,2,3,4) and then, 2) submits that Cruz is not an INS detainee for work purposes (Initial Resp., p.4), (Supp. Resp. Respondent fails to address the issue) and then, 3) submits that Cruz even though not an INS detainee for work exception, Cruz is a detainee as result of his INS detainer (Initial Resp., p.4)(Supp. Resp., i.e. Respondent fails to address the issue). See also Exhibit "D" (Sworn Declaration by Ms. Charlon Moore, Case Manager

-6-

Coordinator). In essence, it is the Respondent who is attempting to confuse this Court and thereby, obfuscate the decisional process in this litigation by his means of semantics.

The Respondent further argues that "Persons held at BOP facilities solely on this basis (i.e. INS detainers) are housed for the convenience and under the jurisdiction of the ICE and are internally referred to as 'INS Detainees'. No such person, the petitioner included, is housed at FPC Montgomery because it is a minimum level institution." Id. ( Supplemental Response, p. 3, ¶5). The Respondent's claim is correct and that is exactly why Cruz, 1) is not an INS Detainee, 2) does not present a Public Safety Factor (i.e. danger to the community or risk of flight), and 3) is eligible for CCC placement under BOP PS 7310.04(b) Community Corrections Center Utilization and Transfer Procedures ("Deportable Aliens").

5. Answer To Paragraph (5) of Respondent's Supplemental Response

In paragraph (5) the Respondent argues that "the term INS Detainee, is also used to refer to persons described in paragraph 4 who are subject to a federal sentence of imprisonment for violations of criminal statutes of the United States Code. The petitioner, in addition to being subject to an ICE detainer, and thus an INS Detainee, is also serving a sentence of imprisonment for violation(s) of (a) criminal statute(s) of the United States." Id. at p.3. In the aforementioned statement the Respondent once again classifies Cruz as an INS detainee when in fact, above, in paragraph 4 the Respondent argues that Cruz is not an INS

-7-

detainee. By reclassifying Cruz as an INS Detainee the Respondent argues that Cruz is not eligible for CCC placement under 7310.04. Please note that Respondent only cites the general BOP PS (i.e. 7310.04) and deliberately fails to indicate which specific section of the Program Statement precludes Cruz from placement in CCC. The Respondent does not cite the specific relevant Section of the Policy Statement because Cruz _is_ eligible for CCC placement under 7310.04(10) **(b)**. The Respondent appears to wrongfully interpret an INS detainer as itself constituting a Public Safety Factor when and such is not the case. To categorize Cruz as an individual who poses a Public Safety Factor, due process requires/mandates for the Respondent to establish that Cruz is a danger to the community or, in the alternative a risk of flight. In the case at bar the Respondent does not argue that Cruz presents a Public Safety Factor based on either of the aforementioned two progs rather, the Respondent interprets the fact that Cruz has an ICE detainer and contrary to law and due process considers the detainer to be the basis of a Public Safety Factor. Respondent's/counsel's frivolous arguments are presented in the instant matter in an effort to cover up his discriminatory practice against Cuban nationals and thereby, justify his contineous discrimination against Cuban nationals.

The only reason the Respondent refuses to place Cruz in CCC is because Cruz is a Cuban national. See United States v. Medina, 775 F.2d 1398 (11th Cir. 1985)(holding that "in order to detain a defendant on the basis of dangerousness the government must prove

-8-

by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community". Id. at 1398. Similarly, in order to detain an individual based on allegations that he is a risk of flight, the government must establish that the individual is a risk flight." Medina, supra, at 1398. Cruz is not a risk of flight for purposes of INS/ICE proceedings because, as determined by the Supreme Court "Cubans" have nowhere to run/flee in light that, the Cuban Government (i.e. Fidel Castro) does not accept the return to Cuba of those nationals convicted of a criminal offense/s. See Benitez, supra, and Clark, supra.

6. Answer To Paragraph (6) Of Respondent's Supplemental Response

In paragraph (6) the Respondent  misconstrues Cruz claims and argues that §3621(e)(2)(B) "places no substantive limitations on official discretion in granting early release from a valid sentence, no constitutionally protected liberty interest is implicated (citing Olim v. Wakinekona, 461 U.S. 238, 249 (1983). The Respondents arguments and the case law are both inapt for the following reasons. First, Cruz is invoking a liberty interest by claiming that he is being discriminated from the benefit/s of a federally funded program (RDAP) based on the fact that he is a Cuban national thus, the aforementioned argument makes Cruz part of a suspect class that is, Cuban nationals (i.e. Hispanics) with an interest in not being the victims of racial discrimination. See Keyes v. School District No.1, 413 U.S. 189, 93 S.Ct. 2686,

37 L.Ed.2d 548 (1973)(holding that "The district court erred in separating Negroes and Hispanos for purposes of defining a 'segragated school'. We have held that Hispanos constitute an identifiable class for purposes of the Fourteenth Amendment...In fact, the district itself recognized that '[o]ne of the things that the Hispano has in common with the Negro is economic and cultural deprivation and discrimination."..." Id. see also Modern Constitutional Law, Cases and Notes, Sixth Edition, by Ronald R. Rotunda, p. 640, Suspect Class and Equal Protection. See also Plyler v. Doe, 457 U.S. 202, 72 L.Ed.2d 786 (1982). "Undocumented Aliens cannot be treated as a suspect class because their presence in this country is in violation of federal law is not a 'constitutional irrelevancy.'" Id at 803. However, in the instant matter Cruz is not an illegal alien, rather, Cruz is a legal permanent U.S. resident and thus, entitled to Equal Protection and as such to receive the benefit/s of the RDAP program, a federally funded program, and which may not be denied on the basis that Cruz is a Cuban national. Therefore, the fact that Cruz is being discriminated against based on his origin/nationality (i.e. Hispano/Cuban) makes Cruz part of a suspect class. **Second,** Cruz does have a right to the protections of the Equal Protection Clause becuase Cruz is not an illegal alien, and even if he was an illegal alien he still has a constitutional right under the equal Protection Clause. "For purposes of the Fourteenth Amendment's Equal Protection Clause which prohibits states from denying equal protection to 'any person

-10-

within its jurisdiction,' undocumented aliens, despite their immigration status are persons 'within the jurisdiction of a state entitled to the equal protection of its laws." Plyler, supra, at 788 n.2.

As demonstrated above Cruz is part of a suspect class (Hispanos (i.e.Cuban nationals) that are being deprived of the benefit/s of a federally funded program (RDAP) based on his nationality, and thereby, divested of the equal protection offered not only by the United States Constitution but also by the Civil Rights Act of 1964.

7.  Answer To Paragraph (7) Of Respondent's Supplemental Response

In paragraph seven the Respondent argues that "Title 18, United States Code, Section 3621(e)(2)(B) provides only that the BOP may grant a reduction in sentence to a prisoner convicted of a nonviolent offense." Id. The respondent further argues that "because §3621(e)(2)(B) sentence reduction is left to the unfettered discretion of the BOP, the statute does not create a constitutionally protected liberty interest." citing Cook, 208 F.3d at 1332 (11th Cir. 2000); Olim, 461 U.S. 249; Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991)(concluding no liberty interest arose from possibility of discretionary grant of incentive good time); Greenholtz v. Inmates of Neb. Penal & Correctional Institutional Complex, 442 U.S. 1, 7 (1979); Venegues v. Herman, 126 F.3d 760, 765 (5th Cir. 1997); Thorton v. Hunt, 852 F.2d 526, 527 (11th Cir. 1988). Based on the foregoing the Respondent argues that "The BOP's policy of not allowing inmates

-11-

with detainers to be released to a halfway house is rationally related to the legitimate purpose of ensuring prisoners are available for transfer on the detainer to the jurisdiction issuing the detainer. The Respondent's reliance on the case law is misplaced and its alleged governmental interest, which violates Cruz constitutional and civil rights, lacks substance/merit.

First, Cruz has successfully completed the RDAP and the "After- care Program" (i.e. the portion of the RDAP which Cruz is to undergo at the halfway house) therefore, it is now unnecessary for Cruz to be placed in halfway house to complete the After-care Program. Consequently, the Respondent is denying Cruz the one year sentence reduction based on the fact that Cruz is a Cuban national and not because Cruz is unable to finish the After-care Program. Cruz has an invested liberty interest to be free from racial discrimination as guaranteed by the United States Constitution and the Civil Rights Act of 1964. Exhibit "A".

Second, BOP PS §7310.04(10)(b) allows for Cruz to be paced in halfway house (CCC). Exhibit "C". "Inmates who are assigned a "Deportable Alien" Public Safety Factor." Id. In the case at bar Cruz cannot be classified as a "deportable" who poses a Public Safety Factor. See Daniel Martinez v. Michael Rozos, No. 03-7334 (January 12, 2005), and Clark v. Martinez, No. 03878 (January 12, 2005). In both aforementioned cases the Court ruled that Cubans were not deportable aliens because, the Cuban Government does not accept the return to the Island of those Cubans convicted of crimes and 2) Cubans do not present a risk of flight because they

-12-

Act of 1964). 4) grant Cruz immediate release from prison since that Cruz has already successfully completed "all" RDAP requirements. Exhibit "A".

8.  Cruz Is Being Exposed To Involuntary Servitude

The Thirteenth Amendment to the United States Constitution places a safeguard against "involuntary servitude" or "slavery". The aim of the Thirteenth Amendment as implemented by the Antipeonage Act, 8 U.S.C.A. former Section 56 [now 42 U.S.C.A. §1994], and 18 U.S.C.A former Section 44 [now §1581], was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States. Polock v. Williams, 322 U.S. 4, 88 L.ed. 1095, 64 S.Ct. 792 (1944). This amendment is not a mere prohibition of state laws establishing or upholding slavery, but absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States. Griffing v. Breckenridge, 403 U.S. 88, 29 L.Ed.2d 338, 91 S.Ct. 1790 (1971). In the Case at bar Cruz, a Cuban national, has been exposed to involuntary servitude for the past nine (9) years at the hands of the Bureau of Prisons who has violated its own policy intended to protect inmates from involuntary servitude. See BOP PS 5251.05, Inmate Work and Performance Pay Program, section 5, page 3 (i.e. provides that INS Detainees are excluded from work). The fact that Cruz is a Cuban national does not deprive him of the protections against involuntary servitude or, slavery as offered by the Thirteenth Amendment. This Amendment, by its own unaided force and effect, abolished slavery and

-15-

established universal freedom. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 20 L.Ed.2d 1189, 88 S.Ct. 2186 (1968). Slavery or involuntary servitude of the Chinese, of the Italian, of the Anglo Saxon, are as much within its compass as slavery of involuntary servitude of the African. Hodges v. United States, 203 U.S. 1, 51 L.Ed. 65, 27 S.Ct. 6 (1906). See also BOP PS 5251.05.

The threshold in the instant matter is whether or not Cruz is an INS Detainee. Based on the fact that Cruz is a Cuban national and INS/ICE has lauched a detainer agaist Cruz the Respondent has denied Cruz the benefits of the RDAP by claiming that INS Detainees are exempted from receiving the benefits of the program (notwithstanding the fact that Cruz has successfully completed the program). Simmilarly, INS Detainees are exempted from work requirements unless they the inmate waives his right not to work. See BOP PS 5351.05. Notwithstanding, the Respondent has "forced" Cruz to work for the past nine (9) years and alleges that Cruz is not an INS Detainee for work purposes. Cruz can only be classified under one of the aforementioned categories that is, either he is an INS Detainee all of the time and for every purpose including but not limited to being exempt from work or, in the alternative he is not an INS Detainee all of the time and for every purpose including but not limited to receiving the benefits of BOP federally funded programs such as the Residential Drug Alcohol Treatment Program (RDAP) and placement in halfway house (CCC). The Respondent cannot choose what status to assign to Cruz based on the Respondent's convenience.

-16-

## CONCLUSION

For the foregoing reasons Cruz respectfully prays of this Honorable Court to grant relief as requested in his habeas corpus petition and thereby, (1) order the respondent to grant Cruz his one year sentence reduction pursuant to 18 U.S.C. §3621(e)(2)(B) or, (2) order the Respondent to place Cruz in half way house or, in the alternative (3) declare that Cruz has been exposed to involuntary servitude for the past nine years and consequently, order the Respondent to "stop" exposing Cruz to involuntary servitude.

December 20, 2005.                    Respectfully submitted,

                                       Juan Carlos Cruz, pro se.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing legal instrument was served on this 20th day of December, 2005, to: United States Attorney's Office, R. Randolph Neely, AUSA, Post Office Box 197, Montgomery, AL 36101-0197. The service was conducted via first class Certified Return Receipt mail. This Certificate of Service is submitted under 28 U.S.C. §1746.

_Juan C. Cruz._

Juan Carlos Cruz, pro se.

-18-